EDWIN D. YORTY, APPELLEE, v. J. I. CASE THRESHING MACHINE COMPANY, APPELLANT.

FILED MAY 13, 1912.   No. 16,696.

1. Master and Servant: INJURY TO SERVANT: ASSUMPTION OF RISKS. The plaintiff's employment required him to handle and move separators in the building used for storing them.   There was not sufficient room to handle them there with "a tongue or other appliance to guide them," and plaintiff was accustomed to hand-ling them without such "appliance."   *Held*, That plaintiff must be considered to have assumed the risk, if any, arising solely from so handling them.

2. Appeal: PLEADING AND PROOF: VARIANCE.   The scope and purpose of the rule that the allegations and proof must agree is to enable the party complained against to know what issue he will be called upon to meet.   A judgment will not be reversed for a technical violation of the letter of the rule, if it appears from the whole record that the party complaining has not been prejudiced thereby.

3. Master and Servant: INJURY TO SERVANT: SPECIAL DAMAGES: EVIDENCE.   In an action for personal injury, plaintiff cannot re-cover damages sustained in some special occupation or employ-ment unless such special damages are alleged and proved.   Evi-dence that plaintiff's regular trade for a number of years had been that of a boiler-maker is incompetent without such allega-tion in the pleadings, and questions as to how plaintiff's injuries interfered with that occupation under such circumstances should not be allowed; but, if the answers to such questions relate wholly to the extent of the injury, such evidence is competent, and the judgment will not be reversed because of the erroneous form of the questions, if it appears from the whole evidence that the defendant has not been prejudiced thereby.

4. ——: ——: PLEADING AND PROOF: VARIANCE.   The defendant alleged that the plaintiff executed a release of all damages, and

32

plaintiff replied that the paper was procured by fraud and mis-representation, setting out fully the transaction, and also alleged that defendant's agent "misread said receipt and paper ·to plaintiff and fraudulently misstated the contents thereof to plaintiff while pretending to read said receipt and paper, and, in misreading said receipt and paper, represented to plaintiff, and plaintiff understood, that it was simply a receipt for his medical and surgical attention, and had nothing to do with any claim for damages, and in reliance upon such understanding and represen- tation he signed the receipt and paper." The evidence was that the agent did not read the paper at all, but, holding the paper in his hands, stated to plaintiff the contents and nature of the same. *Held*, That such variance between the allegation and the proof was immaterial.

5. ———: ———: LIABILITY OF MASTER. An employer is liable for damages caused by the negligence of his employees while engaged in the ordinary work of their employment. The fact that one employee, sued jointly with the employer, was found not to be liable will not prevent a recovery against the employer, if the negligence of other employees was the proximate cause of the injury complained of.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Affirmed.*

*Burkett, Wilson & Brown,* for appellant.

*Wilmer B. Comstock, contra.*

SEDGWICK, J.

This plaintiff alleges that while he was in the employ of the defendant he suffered a personal injury and serious damages caused by the negligence of the defendant. He recovered a judgment in the district court for Lancaster county, and the defendant has appealed.

1. The first contention is that the evidence does not support the allegations of the petition; that is, that there is such a variance between the allegations and the proofs that the judgment cannot be allowed to stand. The peti-tion alleges that the defendant was "engaged in the busi-ness of manufacturing, storing, selling and shipping threshing machines. * * * On the sixth day of June,

1908, the defendants had negligently and carelessly stored in said warehouse a threshing separator, the king-bolt, ball, or third wheel of which was broken, defective and out of repair, which fact was well known to defendants, but of which plaintiff had no knowledge. On the date last mentioned, the defendant Randall negligently and carelessly ordered and commanded the plaintiff to remove said separator from said warehouse. The defendants negligently and carelessly failed to provide any tongue or other appliance by which to draw or push said separator, and made it necessary in the removal thereof for the plaintiff to take hold of and place his hands upon the front wheels of said separator to guide and move the same. Said separator was a heavy and ponderous piece of machinery, weighing many tons. On the date aforesaid, the plaintiff, in obedience to the commands aforesaid, undertook to remove said separator from the warehouse, and to guide the same placed his hands upon one of the front wheels thereof. While so engaged, and while in the exercise of due care, and on account and by reason of the joint and concurrent negligence of the defendants, as aforesaid, in negligently and carelessly permitting said separator to remain in said warehouse with said broken king-bolt, ball, or third wheel, and in negligently and carelessly failing to provide any tongue or other appliance to guide said separator, and negligently and carelessly ordering plaintiff to move said separator in its broken and defective condition aforesaid, the heavy and ponderous portion of said separator above the running gear and wheels thereof fell upon plaintiff's left hand, and pinioned and held said hand between said ponderous and heavy portion of said separator and the front wheel thereof for several minutes and until a lifting jack was procured to raise it up and release plaintiff's hand. Plaintiff's hand and wrist were crushed and mangled, the bones, muscles, tendons, ligaments and tissues of his left hand and wrist so crushed, lacerated and torn as to entirely destroy all use of said hand and wrist."

The allegation that "defendants negligently and care-lessly failed to provide any tongue or other appliance by which to draw or push said separator" was entirely unsup-ported by evidence. The plaintiff testified that there was not room in the store-room to "put a tongue in and operate it in the house," and it appears that the separators were for that reason necessarily kept in that respect as this one was. This condition was well known to the plaintiff, and he must be held to have assumed the risk, if indeed there was any risk, caused solely by the absence of "any tongue or other appliance to guide" the separators in the store-room.

It is contended that the gist of the allegation of negli-gence upon which the plaintiff's recovery, if any, must depend was in permitting the separator to remain in the warehouse with the broken "king-bolt, ball, or third wheel," and that the evidence "shows that the break in the king-bolt had nothing whatever to do with his injury." The testimony of the plaintiff himself, as well as all other testimony in the case, was that the "bolt or ball" was not securely fastened in its place, "and this machine, the socket not being tightened up, there was nothing to hold the ball in there, and it just slipped out and let the ma-chine down on my hand." Without stating in detail the conditions that caused the accident, it is sufficient for an understanding of the question thus presented to say that the record shows that the coupling between the front axle and the framework of the separator became separated at the forward axle; this allowed the axle to revolve for-ward, which suddenly lowered the body of the separator upon plaintiff's hand as it rested on the wheel. The coupling was formed by the ball and socket spoken of in the evidence. If the socket had been properly bolted, it would have held the ball securely, and the coupling could not have separated. The allegation was that "the king-bolt, ball, or third wheel" was broken, defective and out of repair. The proof was that the ball slipped from the socket because the socket was not properly bolted.

Does this constitute such a variance between the allegation and proof as to defeat a recovery? The defendant is entitled to know what issue he will be called upon to meet. He prepares and brings into court the evidence to meet the facts alleged against him, and not some other matters that may be within the knowledge of the parties, but which the plaintiff has not called upon him to answer in court. This is the scope and purpose of the rule that the allegations and proof must agree. The rule is a necessary one and in the administration of justice must always be observed in its true spirit and meaning. It has been somewhat variously applied in different jurisdictions. Some courts have gone to the extreme of literal application without regard to the purpose of the rule, and apparently without considering whether the defendant could possibly have been misled by the variance. See *Wabash W. R. Co. v. Friedman,* 146 Ill. 583. A technical violation of the letter of the law ought not to work a reversal of a judgment, otherwise free from error, if it appears from the record that the defendant was not prejudiced thereby. The substance of the complaint was that, through the negligence of the defendant, the coupling became separated, which caused the forward part of the separator to fall. Whether the ball escaped from the socket because the ball was broken, defective or out of repair, or because the socket itself was defective or out of repair, not being bolted together, is not so material as to have seriously misled the defendant in the light of the evidence in this record.

2. The second objection is that incompetent evidence was received bearing upon the measure of damages. The plaintiff testified that his regular trade for a number of years had been that of a boilermaker, and when on the witness stand was questioned and answered as follows: "Q. In the pursuit of the business and occupation of a boilermaker, to what extent did you use your left hand? * * * A. I can't use it to do any good. * * * Q. What has been the effect of the injury upon the functions

of your left hand in the pursuit of boilermaking? * * *
A. I couldn't use it at all. * * * Q. Just explain to
the jury in what way it has been impaired for use in
boilermaking. * * * A. I don't just understand that.
Q. Well, in what way has its use been affected for boiler-
making? * * * A. Well, it is all shriveled up, and
there is no strength in it, not enough to hold a tool, and
I haven't fingers enough to hold a tool." These questions
and answers were objected to as incompetent, irrelevant
and immaterial, and exceptions taken to the ruling of the
court. The plaintiff had for some time been in the em-
ploy of the defendant, and there was no allegation in
the petition that he was ever engaged in the occupation
of a boilermaker or that he suffered any damages in that
occupation on account of his injuries. It must be con-
ceded that the questions were incompetent, but the ques-
tion is whether the evidence was of such a nature as to be
prejudicial to the defendant, requiring a reversal. There
is very little evidence as to the nature of the occupation
of a boilermaker, and no evidence of the possible earnings
of the plaintiff in that capacity. The answers complained
of related solely to the condition of the hand, which of
course was competent evidence. The evidence itself being
competent, we cannot reverse the judgment because of the
form of the questions, unless we can see from the record
that the defendant might probably have been prejudiced
thereby. We think that the error was without substantial
prejudice to the defendant, requiring a reversal of the
judgment.

3. The defendant offered in evidence a written instru-
ment signed by the plaintiff, which purported, in consid-
eration of the payment of $62 "doctor's bill and other
good and valuable consideration," to release the plaintiff
from all claims for damages on account of the accident
complained of. This writing was pleaded in the answer
as a defense, and the plaintiff in reply alleged, among
other things, that the defendant's agent who procured the
defendant to sign the writing "pretended to read said

receipt." It is contended that this allegation is not sup-
ported by the evidence. The plaintiff testified that the
defendant's agent neither read nor pretended to read this
document to him. Upon this point the court instructed
the jury: "In reference to this purported release, you
are instructed that if the defendant, its agent, or repre-
sentative pretended to read to the plaintiff the said pur-
ported release, and, in doing so, purposely misread the
same, and thereby misled the plaintiff concerning the con-
tents thereof and caused plaintiff to believe and under-
stand that said release only discharged and was only in
settlement of expenses incurred for surgical and medical
attention to his injury, and that the plaintiff relied upon
the statements and representations made by the defendant
company, by and through its authorized agents and em-
ployees, and signed said settlement because thereof, and
without negligence on his part, said release or written
instrument would not under such circumstances bar the
plaintiff's right to recover, but he would be entitled to
maintain his action notwithstanding the signing of said
release." It is insisted that this instruction was errone-
ous because of the variance above indicated. The plain-
tiff testified that the company's manager "sent me up to
the doctor's to get the bill, and the doctor didn't have the
bill ready, and he said, 'Anyway Mr. Randall (the man-
ager) told me he would pay that bill, what do you want
with it?'" That he went several times after the bill, and
finally brought it down to the manager, who handed him
$62, which was the amount of the bill, and told him to go
back and pay the bill, and the witness continued: "That
was when I signed this to show that I had accepted this
$62 to pay the doctor bill with, whatever it is, exhibit
'C,' that is when I signed that one. And then after I paid
the bill I brought back a receipt from the doctor to Mr.
Randall that the bill was paid, but that didn't seem to be
satisfactory to him, and then he called me in and asked
me to sign this (referring to the release). He said, 'This
is just a receipt to show that we paid the doctor bill, to

show to the company that we paid the doctor bill, and I want you to sign it.' I took it and started to undertake to read it, which would take me a long while to figure it out and fool with it, because I couldn't read good, and am a very poor hand at reading anyway, and undertook to take time to read it, and he said hurry up and sign that, that is very important business, and it has got to go off on this afternoon mail. So I signed it on what he said and let it go at that. I supposed that was all there was to it. Q. Now, what, if anything, did he do in reference to reading it? A. He didn't do anything any more than just hold it up and said, 'This is to show we paid the doctor bill. We want to show to the company that we paid the doctor bill.' He didn't pretend to read it whatever. Q. He pretended to state what it contained? A. Just pretended to state what it contained; yes, sir. Q. Now, did you rely upon his statement as to what it contained? A. Yes, sir; I had nothing else to rely on. He wouldn't give me time to try and figure it out. Q. Did you know at that time that it contained any matter excepting a receipt that the doctor bill had been paid? A. No, sir; or I would never have signed it, because I had made up my mind right on the start I would not sign any such a thing, and told him so." He further testified that he could not read the paper and that the manager knew of his inability to read. He testified to other circumstances which tended to support his contention that the manager, while holding this release in his hands, stated to the plaintiff what he represented was the contents of the paper. This evidence was sufficient to require the jury to determine the facts in regard to the matter, and there is no such variance from the allegations of the petition as to require a reversal under the law as already stated.

4. The defendant's final contention is that the defendant and its manager were sued jointly, and there was an allegation in the petition that "the said injuries and damage aforesaid resulted wholly and entirely from the joint and concurrent negligence of the defendants in the man-

ner and form hereinbefore alleged;" that, therefore, the jury having been instructed that there was no evidence against the manager, the verdict against the defendant cannot be sustained. The petition seems to have been framed upon the theory that the manager had personally changed the coupling and negligently failed to properly insert and fasten the bolts that held the socket, but the evidence shows that other employees had been sent by the manager to do this work and it was their negligence in that regard that caused the trouble. Under this condition of the evidence the manager could not be held personally liable, but the defendant is responsible for the negligence of its employees. This objection therefore is not well taken.

We find no error in the record requiring a reversal, and the judgment of the district court is

AFFIRMED.